## WILLIAMS v. UNITED STATES.
### No. 47736.

United States Court of Claims.
June 6, 1949.

Lawrence J. Bernard, Washington, D. C., for the plaintiff. George E. McMurray, Jr., Washington, D. C., was on the brief.

H. S. Fessenden, with whom was Theron Lamar Caudle, Assistant Attorney General, for the defendant. Ellis N. Slack and Andrew D. Sharpe, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and MADDEN, HOWELL, WHITAKER and LITTLETON, Judges.

MADDEN, Judge.

This suit is to recover $68,977.66, which is a part of the income tax paid by the plaintiff in 1943. The income in question was received by the plaintiff in 1942, and the tax was paid in 1943 pursuant to Section 6(e) of the Current Tax Payment Act of 1943. The source of the income was a patent, United States Patent No. 2,090,656, for a short stroke piston device or vibrator which should serve as the operating mechanism of automatic firearms.

The plaintiff began to work on the invention which resulted in the patent in about the year 1925, and continued work on it until February 7, 1931, on which date he filed his application for a patent. The patent was not actually issued until August 24, 1937. In 1940 the plaintiff granted an exclusive license to the Winchester Repeating Arms Company for the use of his patent, subject to exceptions not material here, and that company agreed to pay the plaintiff a royalty upon each gun manufactured which used the plaintiff's invention. On March 19, 1942, the Winchester Company and the plaintiff liquidated the royalty agreement by Winchester's agreeing to pay the plaintiff $234,001.46 in lieu of all payments to which he would otherwise have been entitled under the royalty agreement. The named sum was paid to the plaintiff in 1942. It constituted much more than 80% of all the income which the plaintiff received from his patent at any time before, during, or since 1942.

Section 107(b) of the Internal Revenue Code reads as follows:

"Sec. 107. Compensation for services rendered for a period of thirty-six months or more and back pay.

\*   \*   \*   \*   \*   \*

"(b) Patent, copyright, etc. For the purposes of this subsection, the term 'artistic work or invention', in the case of an individual, means a literary, musical, or artistic composition of such individual or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work on which by such individual covered a period of thirty-six calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that part of the period

preceding the close of the taxable year but not more than thirty-six calendar months."

The plaintiff says that this statute entitles him to compute his taxes upon the income received by him in 1942 from his patent as if that income had been received ratably during the thirty-six months ending on February 7, 1931, the date when he finished his work on his invention, and had been taxed at the income tax rates then in force. The Government says that the tax should be computed as if the income actually received in 1942 had been received ratably during the thirty-six months ending December 31, 1942, and had been taxed at the rates in force in 1940, 1941, and 1942. Since the applicable rates in the latter years were much higher than those which the plaintiff would use, the difference is large.

The obvious hardship of taxing a person who received, all or mostly in one year, income which he had worked many years to earn, and thus subjecting him to high surtax rates, was first dealt with by Congress in Section 220 of the Revenue Act of 1939, Section 107 of the Internal Revenue Code. It provided:

"Sec. 107. Compensation for services rendered for a period of five years or more.

"In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b) paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period."

Subsections (a) and (b) of Section 107 of the Internal Revenue Code in their present form were enacted in Section 139 of the Revenue Act of 1942, which, prior to its passage was H.R. 7378, 77th Congress, 2nd Session. By Section 139, Section 107 was amended and became Section 107(a) which reads as follows:

"Sec. 107. Compensation for services rendered for a period of thirty-six months or more * * *.

"(a) Personal services. If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."

Then Congress added Section 107(b) which we have quoted above, and the meaning of which is the question before us.

Section 107(a) concededly permits the taxpayer, if his work extended over a period of thirty-six months or more, to compute his taxes as if he had been paid monthly concurrently with his work, no matter when the work was done. If then, the plaintiff had been a lawyer who worked for more than three years and finished his work in 1931, but did not receive his fee until 1942, he could have computed his taxes at the rates in force in the years ending in 1931.

The Government says that the plaintiff, whose income was from a patent, and therefore covered by Section 107(b) cannot do as it admits that the lawyer could do, but must compute his tax as if the income received in 1942 had been earned in 1940, 1941, and 1942. In fact it was not earned in those years. To attribute to Congress an intention to relate the income of e. g., a lawyer, to the time when he did the work for which he was ultimately paid, but, in the next subdivision of the same section of the Code to relate the income of an inventor, not to the period when he did the work but to another period arbitrarily specified for the purpose, although nothing relevant occurred in two of the three years

of that period, would be to attribute to Congress a lack of consistency.

Section 107(b) in its first sentence speaks of, inter alia, a patent "the work on which by such individual covered a period of thirty-six calendar months." In the second sentence it provides that the tax should not be more than it would have been if the income had "been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months." The expression "the period" in the second sentence refers, grammatically and logically, to the period referred to in the first sentence, which is the period when the work was done. The fact that the period referred to in the second sentence must precede the close of the taxable year suggests that it should immediately precede it, but the suggestion is not so strong as to enable the interpreter of the language to completely change the reference in the second sentence to "the period" from its grammatical and logical meaning and make it refer to a wholly different period.

We have said that Section 107(b) was, before enactment, contained in H.R. 7378, 77th Congress, 2nd Session. As enacted by the House of Representatives, its last sentence said perfectly plainly what the Government says is its meaning, as enacted, and as applied in this case. It said "the tax attributable (to the part of the income received in the taxable year) shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over the period of thirty-six calendar months ending with the close of the taxable year." We recognize that the change made in the language of the bill in the Senate, and in the bill as enacted may have been made primarily to limit the period of computation to the actual time of work on the invention preceding the close of the taxable year, in a case where in fact some of the necessary thirty-six months of work took place after the taxable year, yet the change also had, we think, the effect of eliminating the requirement of the House of Representatives' version which would have plainly fixed the period for computation as the months immediately preceding the close of the taxable year. The Committee on Finance of the Senate reported to the Senate, S. Rep. No. 1631, 77th Cong., 2nd Sess., pp. 108-109 (1942-2 Cum.Bull. 504, 586) that it had changed the House version so that the tax would be computed as if the income had been received "ratably over (1) the part of the period of the work which preceded the close of the taxable year, or (2) a period of 36 calendar months, whichever of such periods is the shorter." Here the reference to the "period of the work" is unmistakable, and it was this Committee's revision which was enacted into Section 107(b).

It may well be that Congress did not foresee the unusual situation which this case presents, and, for that reason did not clearly answer the question here presented. We think however, that if it had foreseen the situation, it would have answered it as we have, by relating the income and the tax to the time when the work which produced the income was done, and not to some other arbitrarily fixed and otherwise irrelevant period.

The plaintiff may recover upon his claim and the Government may not recover on its counterclaim, which is based upon the same contentions upon which it seeks to defeat the plaintiff's claim. Entry of judgment will be suspended to await the filing by the parties of a stipulation showing the amount, including interest as provided by law, which the plaintiff is entitled to recover.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.